COLONIAL PIPELINE COMPANY v. JEANETTE M. NEILL

No. 128

(Filed 5 February 1979)

**Eminent Domain § 4.3; Gas § 6— interstate pipeline company—right of eminent domain—origin of pipeline immaterial**

G.S. 62-190 clearly confers the right of eminent domain upon interstate pipeline companies incorporated or domesticated under the laws of N.C., regardless of whether their pipelines originate in N.C.

APPEAL by respondent from *Albright, J.*, at the 10 July 1978 Session of GUILFORD County Superior Court.

Colonial Pipeline Company, an interstate common carrier of liquid petroleum products, instituted this special proceeding on 10 March 1978 to condemn respondent's land for the purpose of constructing a portion of a petroleum pipeline originating in Houston,

Texas, and terminating in Linden, New Jersey. On 14 April 1978, respondent filed her answer and a motion to dismiss. The Clerk of Superior Court denied the motion to dismiss, ruled that Colonial was empowered to exercise the right of eminent domain pursuant to G.S. 62-190, and ordered the appointment of commissioners to determine just compensation. The commissioners' report, filed on 26 May 1978, assessed damages in the amount of $3800, and both petitioner and respondent filed exceptions. After hearing the exceptions, the Clerk of Superior Court confirmed the commissioners' report on 12 June 1978. On 30 June 1978, respondent filed a motion for a preliminary injunction to restrain Colonial from constructing the pipeline across her land. At the same time, she requested that her motions for preliminary injunction and to dismiss be consolidated for hearing. After a hearing on these motions, Judge Albright entered an order on 13 July 1978 granting respondent's motion to consolidate but denying her motions for preliminary injunction and to dismiss. Respondent gave notice of appeal to the Court of Appeals. On 3 November 1978, we allowed the petition of both parties for discretionary review prior to determination by the Court of Appeals.

*Adams, Kleemeier, Hagan, Hannah & Fouts by Joseph W. Moss and Daniel W. Fouts, and Horack, Talley, Pharr & Lowndes by Benj. S. Horack and Robert C. Stephens, attorneys for petitioner appellee.*

*Brooks, Pierce, McLendon, Humphrey & Leonard by James T. Williams, Jr., and Reid L. Phillips, attorneys for respondent appellant.*

BRANCH, Justice.

The single question presented by this appeal is whether G.S. 62-190 confers the right of eminent domain on interstate pipeline companies such as Colonial.

It is well settled that the power of eminent domain is inherent in sovereignty. *Morganton v. Hutton & Bourbonnais Co.,* 251 N.C. 531, 112 S.E. 2d 111 (1960). The Legislature has the right to determine what portion of this sovereign power it will delegate to public or private corporations to be used for public benefit. *State v. Club Properties,* 275 N.C. 328, 167 S.E. 2d 385 (1969); *Morganton v. Hutton & Bourbonnais Co., supra.* The right of emi-

nent domain must be conferred by statute, expressly or by necessary implication, and such statute must be strictly construed. *State v. Club Properties, supra.* Our inquiry then is to determine whether the Legislature has evidenced an intent to confer the right of eminent domain upon interstate pipeline companies whose pipelines orginate outside North Carolina.

Prior to 1937, our Legislature had not granted to pipeline companies the right of eminent domain. This power was conferred upon pipeline companies, however, by Chapter 280 of the Session Laws of 1937, codified as C.S. 3542(d) [now G.S. 62-190]. The act was entitled "AN ACT TO AMEND CHAPTER SIXTY-SEVEN [Railroads and Other Carriers] OF THE CONSOLIDATED STATUTES OF NORTH CAROLINA OF ONE THOUSAND NINE HUNDRED AND NINETEEN, AS AMENDED, AND *TO CONFER UPON PIPE LINE COMPANIES THE RIGHT OF EMINENT DOMAIN* AND OTHER POWERS AND RIGHTS." [Emphasis added] and provided:

> Any pipe line company transporting or conveying natural gas, gasoline, crude oil, or other fluid substances by pipe line for the public for compensation, and incorporated under the laws of the State of North Carolina, may exercise the right of eminent domain under the provisions of Chapter thirty-three of the Consolidated Statutes of North Carolina and acts amendatory thereof, and for the purpose of constructing and maintaining its pipe lines and other works shall have all the rights and powers given railroads and other corporations by Chapters thirty-two and sixty-seven of the Consolidated Statutes of North Carolina of one thousand nine hundred and nineteen and acts amendatory thereof, provided the pipe lines of such companies transporting or conveying natural gas, gasoline, crude oil, or other fluid substances shall originate within this State. Nothing herein shall prohibit any such pipe line company granted the right of eminent domain under the laws of this State from extending its pipe lines from within this State into another state for the purpose of transporting natural gas into this State, nor to prohibit any such pipe line company from conveying or transporting natural gas, gasoline, crude oil, or other fluid substances from within this State into another state. All such pipe lines companies shall be deemed public service com-

panies and shall be subject to the laws of this State regulating such corporations.

Chapter 108 of the 1937 Session Laws amended C.S. 1706 [now G.S. 40-2] of the chapter Eminent Domain by adding the underscored words in the following portion of the statute:

§ 1706. By whom right may be exercised.—The right of eminent domain may, under the provisions of this chapter, be exercised for the purpose of constructing their roads, canals, pipe lines originating in North Carolina for the transportation of petroleum products, lines of wires, or other works, which are authorized by law and which involve a public use or benefit, by the bodies politic, corporation, or persons following:

1. Railroads, street railroads, plankroad, tramroad, turnpike, canal, pipe lines originating in North Carolina for the transportation of petroleum products, telegraph, telephone, electric power or lighting, public water supply, flume, or incorporated bridge companies.

These statutes overlap to a certain degree. The right of eminent domain was conferred upon pipeline companies by C.S. 3542(d), and the existence of that right was recognized in C.S. 1706. In both statutes, the right was limited to pipelines originating in North Carolina. There are, however, distinctions between the two. The right of eminent domain conferred by C.S. 3542(d) is limited to pipeline companies "incorporated under the laws of the State of North Carolina," whereas no such limitation appears in C.S. 1706. On the other hand, C.S. 3542(d) contains a broader grant of rights and powers than does C.S. 1706. Both statutes allow pipeline companies to exercise the right of eminent domain under the provisions of the chapter, Eminent Domain. In addition, C.S. 3542(d) provides that a pipeline company "for the purpose of constructing and maintaining its pipelines and other works shall have all the rights and powers given railroads and other corporations by chapters thirty-two [Electric, Telegraph and Power Companies] and sixty-seven [Railroads and Other Carriers] of the Consolidated Statutes of North Carolina . . . ."

In 1943, C.S. 3542(d) was renumbered G.S. 60-146 and C.S. 1706, G.S. 40-2. With respect to petroleum pipelines, the provisions of G.S. 40-2 have remained unchanged.

Such has not been the case, however, with regard to G.S. 60-146. That statute was amended in 1951 to extend the right of eminent domain to "foreign corporations domesticated under the laws of North Carolina . . . ." Although the right was extended to domesticated foreign corporations, it remained limited to pipelines originating in North Carolina. The most significant amendment, for purposes of this appeal, was enacted in 1963. Chapters 56 (Electric, Telegraph and Power Companies), 60 (Railroads and Other Carriers) and 62 (Utilities Commission) were amended, revised, recodified and rewritten as Chapter 62 (Public Utilities). G.S. 60-146 was renumbered G.S. 62-190 and amended, by omitting the language requiring the pipelines to originate in this State, to read in its present form:

> § 62-190. Right of eminent domain conferred upon pipeline companies; other rights.—Any pipeline company transporting or conveying natural gas, gasoline, crude oil, coal in suspension, or other fluid substances by pipeline for the public for compensation, and incorporated under the laws of the State, or foreign corporations domesticated under the laws of North Carolina, may exercise the right of eminent domain under the provisions of the Chapter, Eminent Domain, and for the purpose of constructing and maintaining its pipelines and other works shall have all the rights and powers given railroads and other corporations by this Chapter and acts amendatory thereof. Nothing herein shall prohibit any such pipeline company granted the right of eminent domain under the laws of this State from extending its pipelines from within this State into another state for the purpose of transporting natural gas or coal in suspension into this State, nor to prohibit any such pipeline company from conveying or transporting natural gas, gasoline, crude oil, coal in suspension, or other fluid substances from within this State into another state. All such pipeline companies shall be deemed public utilities and shall be subject to regulation under the provisions of this Chapter.

The language of the statute appears to confer the right of eminent domain upon *any* pipeline company incorporated or do-

mesticated under the laws of North Carolina. The statute does not by its terms limit the right to companies whose pipelines originate in North Carolina.

Appellant contends, however, that the right of eminent domain conferred upon pipeline companies by G.S. 62-190 is limited by the substantive provisions contained in Chapter 40, Eminent Domain, due to the reference in G.S. 62-190 to that chapter. Appellant, therefore, argues that by virtue of G.S. 40-2, only those companies whose pipelines originate in North Carolina have the right of eminent domain. Application of the pertinent rules of statutory construction leads us to a different conclusion.

It is well settled that the intent of the Legislature controls the interpretation of a statute. *Underwood v. Howland*, 274 N.C. 473, 164 S.E. 2d 2 (1968). A logical starting point in attempting to ascertain the legislative intent is with the title of the statute. Justice Clark (later Chief Justice), speaking for the Court, in *State v. Woolard*, 119 N.C. 779, 25 S.E. 719 (1896), stated:

> . . . [T]he title is part of the bill when introduced, being placed there by its author, and probably attracts more attention than any other part of the proposed law, and if it passes into law the title thereof is consequently a legislative declaration of the tenor and object of the act. . . . Consequently, when the meaning of an act is at all doubtful, all the authorities now concur that the title should be considered.

*Accord: Sykes v. Clayton*, 274 N.C. 398, 163 S.E. 2d 775 (1968), and cases cited therein.

G.S. 62-190 is entitled "Right of eminent domain conferred upon pipeline companies; other rights." It logically follows that the Legislature did not intend for pipeline companies to be dependent upon G.S. 40-2 for a right which is clearly conferred by G.S. 62-190.

Neither does it appear that the Legislature intended pipeline companies to be limited by G.S. 40-2. Legislative intent may be found from the language of the act, its legislative history, and circumstances surrounding its adoption. *Milk Commission v. National Food Stores, Inc.*, 270 N.C. 323, 154 S.E. 548 (1967). The history of G.S. 62-190 indicates a legislative intent to broaden the scope of the act and to encompass interstate as well as local pipe-

line companies. In its original form, G.S. 62-190 conferred the right of eminent domain only upon pipeline companies incorporated under the laws of North Carolina, provided their pipelines originated in this State. In 1951, the right was extended to foreign corporations domesticated under the laws of North Carolina. The limitation of the right to those companies whose pipelines originate in North Carolina was dropped in 1963. In construing a statute with reference to an amendment, it is presumed that the Legislature intended either (1) to change the substance of the original act or (2) to clarify the meaning of it. *Childers v. Parker's, Inc.*, 274 N.C. 256, 162 S.E. 2d 481 (1968). Prior to the 1963 amendment, no clarification was necessary because G.S. 40-2 and G.S. 62-190 both limited the right of eminent domain to pipelines originating in North Carolina. It is presumed then, that in amending G.S. 62-190 in 1963, the intent of the Legislature was to change the substance of the act by removing the limitation contained therein.

Since G.S. 62-190 contains no procedural provisions, it is reasonable to assume that the reference to Chapter 40, Eminent Domain, is to the procedural provisions of that chapter. Even if that reference is to both the procedural and substantive provisions of Chapter 40, however, we do not believe that the language "pipelines originating in North Carolina" in G.S. 40-2 imposes a limitation on G.S. 62-190. Where one statute deals with a subject in general terms and another statute deals with a part of the same subject in detail, the specific statute will be construed as controlling, unless it appears that the Legislature intended to make the general act controlling. This is especially so when the specific act is later in point of time. *National Food Stores v. Board of Alcoholic Control*, 268 N.C. 624, 151 S.E. 2d 582 (1966). G.S. 40-2 merely states for what purposes and by whom the right of eminent domain may be exercised under the provisions of Chapter 40. In 1937, "pipelines originating in North Carolina" was added to the list, and the pertinent provisions relative thereto have remained unchanged since that time. G.S. 62-190 was enacted in the same year. It conferred upon pipeline companies incorporated under the laws of North Carolina with pipelines originating in the State the right of eminent domain. It provided that such companies could exercise the right under the provisions of the chapter, Eminent Domain. It also conferred upon the com-

panies for the purpose of constructing and maintaining pipelines, all the rights and powers given to railroads, and electric, telegraph and power companies. From these and other provisions of G.S. 62-190, it is readily apparent that, in the context of eminent domain, this statute deals with pipelines in a detailed and specific manner while G.S. 40-2 deals with the subject in only a general way. G.S. 62-190 should thus be construed to be the controlling statute, especially since it became effective in its present form at a later point in time than G.S. 40-2.

For the reasons stated, we hold that G.S. 62-190 clearly confers the right of eminent domain upon interstate pipeline companies incorporated or domesticated under the laws of North Carolina, regardless of whether their pipelines originate in North Carolina. Therefore, the trial court correctly denied appellant's motions for preliminary injunction and to dismiss. The order entered by Judge Albright on 13 July 1978 is

Affirmed.