STATE OF NORTH CAROLINA ex rel. WILLIAM W. COBEY, JR., SECRETARY DEPARTMENT OF ENVIRONMENT, HEALTH AND NATURAL RESOURCES v. VIVIAN ANNE SIMPSON

No. 56PA92

(Filed 18 December 1992)

**1. Waters and Watercourses § 7 (NCI3d) — remedial provisions of CAMA — effect of 1992 amendment of statute**

The 1992 amendment to N.C.G.S. § 113A-126(a) entitled "An Act to Clarify the Development, Delegation, and Injunctive Relief Provisions of the Coastal Area Management Act"

was intended by the legislature to clarify, not change, the meaning of that statute.

**Am Jur 2d, Waters §§ 430-435.**

2. **Waters and Watercourses § 7 (NCI3d) — area of environmental concern — unauthorized development — violation of CAMA and rules — restoration required**

When there has been unauthorized development in an area of environmental concern sufficiently inconsistent with the Coastal Area Management Act (CAMA) and the Coastal Resources Commission rules promulgated pursuant thereto to have warranted denial of a permit had defendant applied to the Commission for a permit, CAMA and the Commission rules require restoration of the resources to the predevelopment condition.

**Am Jur 2d, Waters §§ 430-435.**

3. **Waters and Watercourses § 7 (NCI3d) — Coastal Resources Commission rule — restoration to "fullest extent practicable"**

The Coastal Resources Commission rule requiring restoration to the "fullest extent practicable" consistent with the need to avoid additional damages to the resources means practicable in an environmental and engineering sense, not an economical one. Moreover, in enacting CAMA, the General Assembly has established its priorities through a comprehensive regulatory scheme, and it is inappropriate for the courts to attempt to balance the private costs of restoration against the benefits of the coastal wetlands environment.

**Am Jur 2d, Waters §§ 430-435.**

4. **Waters and Watercourses § 7 (NCI3d) — fill materials in coastal wetlands — CAMA violation — entire removal required**

Once the trial court determined that fill materials deposited by defendant in coastal wetlands violated CAMA, the court should have ordered that defendant remove all of the fill materials rather than only a portion thereof where there was no evidence that partial removal would effect natural restoration of the filled wetlands over time, and defendant adduced no evidence that removal of all of the fill materials was impracticable.

**Am Jur 2d, Waters §§ 430-435.**

STATE EX REL. COBEY v. SIMPSON

[333 N.C. 81 (1992)]

5. **Waters and Watercourses § 7 (NCI3d) — retaining wall and bulkhead addition — CAMA violations — entire removal required**

   Once the trial court determined that a retaining wall and a capboard addition to an existing bulkhead were built in violation of CAMA, the trial court should have ordered defendant to remove the capboard addition to the bulkhead and the entire retaining wall instead of ordering defendant to remove the capboard and only part of the retaining wall in order to achieve compliance with the CAMA mandate to restore the resources. The removal of all structures or parts thereof constructed in violation of CAMA or the rules promulgated pursuant thereto is necessary to accomplish the purpose of the Act; otherwise, the permit-letting provisions of CAMA would be read as mere guidelines rather than strict requirements.

   **Am Jur 2d, Waters §§ 430-435.**

6. **Waters and Watercourses § 7 (NCI3d) — fill in wetlands — CAMA violation — small area affected — restoration required**

   ' There was no merit to defendant's contention that restoration of her property to predevelopment condition was not required because the unauthorized filling of wetlands on her property covered an area of only 5,000 square feet and did not significantly disrupt the adjacent marshlands, since CAMA does not merely regulate significant development but regulates all development in our coastal wetlands.

   **Am Jur 2d, Waters §§ 430-435.**

On discretionary review pursuant to N.C.G.S. § 7A-31 of a published decision of the Court of Appeals, 105 N.C. App. 95, 411 S.E.2d 616 (1992), affirming a judgment entered by Manning, J., in the Superior Court, Carteret County, on 21 September 1990, finding that defendant had violated the Coastal Area Management Act, N.C.G.S. §§ 113A-100 to -128 (1989 and Supp. 1992), and the Dredge and Fill Act, N.C.G.S. § 113-229 (1990), and ordering removal of some of the unauthorized structures and fill materials. Heard in the Supreme Court 6 October 1992.

   *Lacy H. Thornburg, Attorney General, by J. Allen Jernigan and Daniel F. McLawhorn, Special Deputy Attorneys General, for the State-appellant.*

*Bennett, McConkey, Thompson & Marquardt, P.A., by Thomas
S. Bennett, for defendant-appellee.*

*Conservation Council of North Carolina, by John D. Runkle,
General Counsel, amicus curiae.*

WHICHARD, Justice.

The issue is whether defendant must remove fill material which
she caused to be deposited in coastal wetlands, a retaining wall
and an addition to an existing bulkhead containing the fill material,
which she also caused to be constructed in violation of the Coastal
Area Management Act of 1974 ("CAMA"), N.C.G.S. §§ 113A-100
to -128 (1989 & Supp. 1992), and the Dredge and Fill Act of 1969
("DFA"), N.C.G.S. § 113-229 (1990). The trial court ordered removal
of only sixty feet of the upper level of the retaining wall and
excavation of the adjacent fill dirt back therefrom at an upward
slope for a distance of thirty inches, reasoning that such actions
would achieve compliance with CAMA and DFA by allowing natural
restoration of the filled wetlands over time. The Court of Appeals
affirmed, construing only the remedial provisions of CAMA. The
Court of Appeals held that the language of section 113A-126(a)
vested virtually complete discretion in the trial court to fashion
an appropriate remedy, and that the trial court had not abused
its discretion. *State ex rel. Cobey v. Simpson,* 105 N.C. App. 95,
411 S.E.2d 61 (1992). On 21 April 1992, this Court allowed plaintiff's
petition for discretionary review.

The State argues that once the trial court found defendant
to be in violation of CAMA or DFA, it had no option but to order
restoration of the affected site to pre-violation conditions. We hold
that because the violations were proved, the court must order
removal of the unauthorized development, both structures and fill
materials. Accordingly, we reverse.

The General Assembly enacted DFA in 1969 and CAMA in
1974 to protect, preserve, manage and provide for the orderly
development of one of North Carolina's most valuable resources,
the coastal estuarine system. N.C.G.S. § 113A-102(a) (legislative
findings and goals). In particular, coastal wetlands, or marshlands,
historically considered wastelands that should be reclaimed or put
to productive use, have been recognized by the General Assembly
as integral to the entire estuarine system — "unique, fragile, and
irreplaceable." *See Adams v. Dept. of N.E.R.,* 295 N.C. 683, 692-93,

249 S.E.2d 402, 407-08 (1978); Thomas Schoenbaum, *The Management of Land and Water Use in the Coastal Zone: A New Law Is Enacted in North Carolina*, 53 N.C. L. Rev. 275, 277-78, 280 (1974); Thomas Earnhardt, *Defining Navigable Waters and the Application of the Public-Trust Doctrine in North Carolina: A History and Analysis*, 49 N.C. L. Rev. 888, 888-92 (1971). Within the comprehensive management plan established by CAMA, and applicable to DFA, "[h]ighest priority of use [is given] to the conservation of existing coastal wetlands." 15A NCAC 7H. 0205(d) (Nov. 1991).

The central mechanism for implementation of the management program established by CAMA applies only to lands and waters designated an area of environmental concern ("AEC"). Coastal wetlands (or marshlands, as defined in DFA, N.C.G.S. § 113-229(n)(3), terms herein used interchangeably) have been designated AECs pursuant to N.C.G.S. § 113A-113(a) and (b)(1). CAMA requires that a permit be obtained before any "development" is undertaken in an AEC. N.C.G.S. § 113A-118(a). DFA similarly requires that a permit be obtained before any dredging or filling project is begun in, *inter alia*, marshlands. N.C.G.S. § 113-229(a). (Permit issuance under DFA is coordinated by the Coastal Resources Commission, which is created by and authorized to administer CAMA, so that a single, expedited permitting process exists for CAMA and DFA. N.C.G.S. § 113-229(e) ). "Development" is broadly defined to include any activity "involving, requiring, or consisting of the construction or enlargement of a structure; excavation; dredging; filling; dumping; . . . bulkheading; . . . [or] clearing or alteration of land as an adjunct of construction." N.C.G.S. § 113A-103(5)a. Permits will be granted only if the development, so defined, is consistent with CAMA and the rules, guidelines or local land-use plans promulgated pursuant thereto. N.C.G.S. § 113A-120(a)(8). The coastal wetlands guidelines, for example, require that bulkheads or other shore stabilization measures "be constructed landward of significant marshland or marshgrass fringes" and aligned with approximate mean high water or normal water level. 15A NCAC 7H. 0208(b)(7)(A) and (B) (Nov. 1991).

During a routine surveillance flight on 17 May 1984, personnel of the Department of Environment, Health and Natural Resources ("DEHNR"), successor to the Department of Natural Resources and Community Development, observed construction of a bulkhead on property defendant owned in Carteret County near Stella, adjacent to Cales Creek (locally known as Neds Creek), a tributary

of the White Oak River. During a subsequent site inspection on 21 May 1984, five marshlands species were found growing landward of the bulkhead: saw grass (*Cladium jamaicense*), bulrush (*Scirpus spp.*), saltwater cordgrass (*Spartina alterniflora*), salt grass (*Distichlis spicata*), and salt meadow grass (*Spartina patens*). Clippings and debris ("rack" material), brought in by the tides, were found accumulating at the highest tide mark, and marshlands landward of the bulkhead were the same elevation as the adjacent marshlands outside the bulkhead. The presence of such vegetation, and the occurrence of regular or occasional flooding by tides, define "coastal wetlands" protected under the statutes. N.C.G.S. § 113A-113(b)(1); N.C.G.S. § 113-229(n)(3). DEHNR, however, did not deem the bulkhead a violation of CAMA because it replaced a bulkhead built prior to the effective date of the statute. 15A NCAC 7J. 0210 and .0211 (Nov. 1991).

On a subsequent flight on 17 September 1985, DEHNR personnel observed that a retaining wall through the marshlands had been constructed perpendicular to the bulkhead and extending from the bulkhead, through the marshlands, towards high ground. An inspection on 16 October 1985 showed that fill material now covered the marshgrass landward of the bulkhead. The bulkhead had been capped with an additional piece of timber, raising it another eight inches. An inspection on 24 January 1986 showed that the retaining wall had been extended to high ground and the area had been seeded with rye grass.

On 30 January 1986, DEHNR served defendant with a notice of violation requiring her to cease and desist her fill activity and requesting that personnel be allowed on her property to dig post holes to determine the dimensions of the affected wetlands to be restored. Defendant refused to comply. On 18 March 1986, DEHNR personnel took core samples on the site, which indicated that a substrate of identifiable marsh species underlay an approximately five thousand square foot area covered by topsoil and sand fill materials. Based on these findings, DEHNR prepared a restoration agreement, pursuant to 15A NCAC 7J. 0410 (Dec. 1991), which plan, referencing the notice of violation, was served on defendant on 21 March 1986. Defendant refused to restore the area. On 9 April 1986, DEHNR served defendant with a notice of continuing violation, again requesting her to cease and desist her unauthorized activities and restore the area. Following defendant's continued refusal to restore the area, DEHNR referred the matter to the

## STATE ex rel. COBEY v. SIMPSON

[333 N.C. 81 (1992)]

Attorney General, who instituted this action pursuant to CAMA section 113A-126(a) and DFA section 113-229(1).

In its complaint dated 11 June 1986, the State alleged that defendant placed fill material on marshlands subject to regulation under CAMA and DFA without obtaining the requisite permits. The State sought, *inter alia*, preliminary and permanent mandatory injunctions compelling defendant to restore the area to its condition prior to the unauthorized development. In the alternative, the State would restore the area, and it sought damages equal to the cost of such restoration. The State did not request that the court impose civil penalties on defendant.

On a prior, interlocutory appeal, this Court determined that defendant was not entitled to a trial by jury. *State ex rel. Rhodes v. Simpson*, 325 N.C. 514, 385 S.E.2d 329 (1989). On remand, the trial court, sitting without a jury, concluded, in pertinent part, that defendant or her agents violated CAMA section 113A-118(a) by constructing the retaining wall, enlarging the existing bulkhead, and depositing fill in marshlands or coastal wetlands duly designated an area of environmental concern and therefore subject to regulation pursuant to CAMA and DFA, without first obtaining the requisite permit. It further concluded that defendant or her agents violated DFA section 113-229(a) by placing fill materials in marshlands without first obtaining the requisite permit. The destruction of existing coastal wetlands by such development is inconsistent with the State guidelines, 15A NCAC 7H. 0205, and therefore could not be permitted under either CAMA or DFA. N.C.G.S. § 113A-120(a)(8) (permit to be denied if development is inconsistent with State guidelines); N.C.G.S. § 113-229(e) (permit may be denied upon finding of significant adverse effect on water, etc.).

Notwithstanding its finding of these violations, the trial court concluded that removal of the unauthorized fill materials, the one-hundred-seventy-five foot retaining wall, and eight by eight inch timber placed atop the bulkhead, was not required to achieve compliance with CAMA, DFA, or the rules promulgated pursuant thereto, *i.e.*, 15A NCAC 7J. 0410. Rather, it concluded that removal of sixty feet of the upper level of the unpermitted retaining wall which defendant or her agents placed within the coastal wetlands AEC, and excavating the adjacent fill dirt back therefrom at an upward slope for a distance of thirty inches, would achieve compliance with CAMA, DFA, and the rules promulgated pursuant

thereto, by allowing such natural restoration of the filled wetlands as may occur over time. It accordingly ordered this course of action.

The State appealed to the Court of Appeals and, as noted, the Court of Appeals affirmed the trial court's order. Referring to *Adams*, 295 N.C. at 702, 249 S.E.2d at 413, the court acknowledged that DEHNR is authorized to prepare and adopt guidelines which require restoration to conditions prior to unauthorized development, *e.g.* 15A NCAC 7J. 0410, but held it is unable to compel this remedy in court, statutory violations notwithstanding. *Simpson*, 105 N.C. App. at 97, 411 S.E.2d at 618. The Court of Appeals reasoned that the specific language of the remedial provision of CAMA section 113A-126(a) bestowed virtually complete discretion in the trial court to fashion an appropriate remedy. *Id.* at 97-98, 411 S.E.2d at 618. Further, it held that this specific grant of broad discretion in the trial court creates an abuse of discretion standard of appellate review, and referring to the expert testimony, as well as the trial court's visit to the site, it found no abuse of discretion. *Id.* at 98, 411 S.E.2d at 618. The court concluded that "[t]he legislature has created an ecological watchdog without the teeth necessary to protect its charge." *Id.* at 97, 411 S.E.2d at 618.

On this appeal, the State basically argues (1) that the courts below misinterpreted legislative intent with regard to the remedial provisions of both CAMA and DFA, and (2) that the trial court's order amounted to an after-the-fact *de jure* variance violating the Separation of Powers Clause of the North Carolina Constitution. N.C. Const. art. 1, § 6. Because we hold that the remedial provisions of CAMA require the court to order the mandatory injunctive relief the State seeks, we need not address the constitutional question or construe the remedial provisions of DFA.

[1]   The only issue, then, involves interpretation of the remedial provisions of CAMA, section 113A-126(a), and application of these provisions, properly interpreted, to the facts of the case. A recent enactment amending the provision facilitates our interpretation. *Burgess v. Your House of Raleigh*, 326 N.C. 205, 216, 388 S.E.2d 134, 141 (1990) ("Courts may use subsequent enactments or amendments as an aid in arriving at the correct meaning of the prior statute by utilizing the natural inferences arising out of the legislative history as it continues to evolve.").

STATE ex rel. COBEY v. SIMPSON

[333 N.C. 81 (1992)]

At the time defendant enlarged the existing bulkhead, constructed a retaining wall, and filled the wetlands, CAMA section 113A-126 read, in pertinent part:

**§ 113A-126. Injunctive relief and penalties.**

(a) Upon violation of any of the provisions of this Article or of any rule or order adopted under the authority of this Article the Secretary may, either before or after the institution of proceedings for the collection of any penalty imposed by this Article for such violation, institute a civil action in the General Court of Justice in the name of the State upon the relation of the Secretary for *injunctive relief to restrain the violation and for such other or further relief in the premises as said court shall deem proper.*

N.C.G.S. § 113A-126(a) (1989) (emphasis added). Effective 2 July 1992, section 113A-126 was amended. 1991-92 N.C. Sess. Laws ch. 839, § 3. That amendment was contained in an act entitled "An Act to Clarify the Development, Delegation, and Injunctive Relief Provisions of the Coastal Area Management Act." *Id.* Section 113A-126(a) now reads, in pertinent part:

**§ 113A-126. Injunctive relief and penalties.**

(a) Upon violation of any of the provisions of this Article or of any rule or order adopted under the authority of this Article the Secretary may, either before or after the institution of proceedings for the collection of any penalty imposed by this Article for such violation, institute a civil action in the General Court of Justice in the name of the State upon the relation of the Secretary for *injunctive relief to restrain the violation and for a preliminary and permanent mandatory injunction to restore the resources consistent with this Article and rules of the Commission. If the court finds that a violation is threatened or has occurred, the court shall, at a minimum, order the relief necessary to prevent the threatened violation or to abate the violation consistent with this Article and rules of the Commission.*

N.C.G.S. § 113A-126(a) (Supp. 1992) (emphasis added).

The language upon which defendant focuses, "for such other or further relief in the premises as said court shall deem proper," was deleted by the recent enactment, and language which clearly

and unambiguously mandates issuance of an injunction, once a violation has been proved, was added. Defendant argues that the General Assembly changed, rather than clarified, the prior law, notwithstanding the title of the amendment. *See, e.g., Pipeline Co. v. Neill*, 296 N.C. 503, 509, 251 S.E.2d 457, 461 (1979) (in construing a statute with reference to an amendment, it is presumed that the legislature intended either to change the substance of the prior act or to clarify it) (citing *Childers v. Parker's, Inc.*, 274 N.C. 256, 260, 162 S.E.2d 481, 483 (1968)). We disagree.

In matters of statutory interpretation, the task of the Court is to ascertain and adhere to the intent of the legislature. *Brooks, Comr. of Labor v. Grading Co.*, 303 N.C. 573, 587, 281 S.E.2d 24, 33 (1981). To ascertain legislative intent with regard to the recent enactment, we presume that the legislature acted with full knowledge of prior and existing law and its construction by the courts. *Lumber Co. v. Trading Co.*, 163 N.C. 314, 317, 79 S.E. 627, 628-29 (1913). We therefore cannot, as defendant would have us do, ignore the title of the bill.

> [T]he title is part of the bill when introduced, being placed there by its author, and probably attracts more attention than any other part of the proposed law, and if it passes into law the title thereof is consequently a legislative declaration of the tenor and object of the Act. . . . Consequently, when the meaning of an act is at all doubtful, all the authorities now concur that the title should be considered.

*State v. Woolard*, 119 N.C. 779, 780, 25 S.E. 719, 719 (1896); *accord, e.g., Pipeline Co. v. Neill*, 296 N.C. at 508, 251 S.E.2d at 461; *Sykes v. Clayton*, 274 N.C. 398, 406, 163 S.E.2d 775, 781 (1968). The amendment here was entitled "An Act to *Clarify* the Development, Delegation, and Injunctive Relief Provisions of the Coastal Area Management Act." 1991-92 N.C. Sess. Laws ch. 839, § 3 (emphasis added). In holding that the legislature intended to clarify, not change, the meaning of CAMA section 113A-126(a), we follow the rule that "[i]n construing a statute it will be assumed that the legislature comprehended the import of the words employed by it to express its intent." *Upchurch v. Funeral Home*, 263 N.C. 560, 565, 140 S.E.2d 17, 21 (1965).

The recent revision of section 113A-126(a) authorizes the Secretary of DEHNR to institute an action for certain injunctive relief and necessarily vests jurisdiction in the courts to order that

relief. N.C.G.S. § 113A-126(a) (Supp. 1992). *See, e.g., Board of Education v. Dickson,* 235 N.C. 359, 361, 70 S.E.2d 14, 17 (1952) (meaning of statutes is to be found in what they necessarily imply as much as in what they specifically express). Further, it mandates issuance of an injunction once a violation of CAMA has been proved, as here, and declares that the purpose of mandatory injunctive relief is to "restore the resources" in accordance with CAMA and the rules of the Coastal Resources Commission ("Commission") promulgated pursuant to CAMA. N.C.G.S. § 113A-126(a) (Supp. 1992). To that end, section 113A-126(a) expressly references the rules of the Commission so that the courts may determine the "relief necessary to abate the violation." *Id.*

[2, 3] When there has been, as here, unauthorized development, sufficiently inconsistent with CAMA and the Commission rules to have warranted denial of a permit, had defendant applied to the Commission for a permit, CAMA and the Commission rules require restoration of the resources. In particular, the Commission rules state that:

> Any violation involving development which is inconsistent with guidelines for development within AECs (*i.e.,* wetland fill, improper location of a structure, etc.) must be corrected by restoring the project site to pre-development conditions upon notice by the Commission or its delegate that restoration is necessary to recover lost resources, or to prevent further resource damage.

15A NCAC 7J. 0410 (Restoration/Mitigation). The State recognizes, as a general proposition, that restoration to pre-development conditions is not always possible. The Commission rules elsewhere qualify that requirement. "In all cases [of development sufficiently inconsistent with CAMA or the Commission rules to have warranted denial if the permits application process had been followed], restoration shall be required to the fullest extent practicable consistent with the need to avoid additional damage to the resources . . . ." 15A NCAC 7J. 0409(f)(4)(B) (Dec. 1991). Basic rules of statutory construction compel us to construe the term "fullest extent practicable" as practicable in an environmental and engineering sense, not an economic one. *See State v. Tew,* 326 N.C. 732, 739, 392 S.E.2d 603, 607 (1990) (words and phrases of a statute must be construed as part of a composite whole and accorded only that meaning which other modifying provisions and the clear intent and purpose of the act will permit). The modifying phrase, "consist-

ent with the need to avoid additional damage to the resources,"
connotes only concern about the environment. Moreover, in enact-
ing CAMA, the General Assembly has established its priorities
through a comprehensive regulatory scheme, completely prohibiting,
e.g., construction of bulkheads and other stabilization structures
in wetlands, or the filling of wetlands therein, as happened in
the case at bar. In that context, it is inappropriate, under the
statute and the rules promulgated pursuant to it, for the courts
to attempt to balance the private costs of restoration against the
benefits of the coastal wetlands environment. The General As-
sembly has performed that balancing task.

[4] Applying these rules to the evidence here, we conclude that
there was no evidence that excavation of only the fill materials
adjacent to and back thirty inches from the retaining wall, rather
than removal of the sixteen inches of fill defendant deposited over
the wetlands, contravening both CAMA and DFA, would effect
natural restoration of the filled wetlands over time. The State's
experts testified that the wetlands defendant altered and damaged
could only be restored by removing approximately sixteen inches
of fill to the elevation of the adjacent wetlands outside the bulkhead
and retaining wall, thus allowing the wetlands species to revegetate.
These wetlands species would not reestablish the damaged wetlands
if the area were left alone because the elevation differential be-
tween wetlands inside and outside the bulkhead and retaining wall
allows ponding. Ponding, the resultant stagnation of water, and
increased salt concentrations prevent the wetlands species from
reestablishing, either from below or seeded above from rack ac-
cumulations. Defendant's own expert in soil science opined that
the dominant species in the adjacent wetlands, e.g., black needlerush
(Juncus roemerianus), would grow again only if the fill materials
were removed. Otherwise, only the more salt tolerant wetlands
species would survive in the area. Defendant adduced no evidence
that removal of the sixteen inches of fill materials was imprac-
ticable. For these reasons, we hold that, once the trial court found
that the sixteen inches of fill materials deposited violated CAMA,
it should have ordered such fill materials removed.

[5] An ancillary question is whether the entire length of the
retaining wall and the capboard enlarging the bulkhead, which
construction contravened CAMA, must be removed to achieve com-
pliance with the CAMA mandate to restore the resources. The
trial court found that removal of only the upper level of sixty

feet of the retaining wall would facilitate inundation of the damaged and altered wetlands, inundation that would presumably effect, over time, natural restoration of the site. The court therefore ordered defendant to remove only that part of the retaining wall, instead of the entire one-hundred-seventy-five foot length, and the capboard enlarging the existing bulkhead.

To answer that question, we look to the Commission rules, which were expressly authorized and given mandatory effect by the recent re-enactment of CAMA section 113A-126(a). Rule 7J. 0409(f)(4)(B)(v) specifically requires that "[a]ny structure or part of a structure that is constructed in violation of . . . the Act, or the Commission's rules[,] shall be removed or modified as is necessary to correct the violation . . . ." 15A NCAC 7J. 0409(f)(4)(B)(v) (Dec. 1991). The bulkhead and the retaining wall are "structures" within the meaning of the Act and the rules. See 15A NCAC 7H. 0208(b)(7)(D) ("bulkhead" described as "structure employed for shoreline stabilization"); 15A NCAC 7J. 0102(10) (Apr. 1990) ("structure" defined as including, but not limited to, buildings, bridges, piers, wharves and docks, timber breakwaters, mooring pilings, pile clusters, navigational aids, net stakes, or concrete, steel, or wood boat ramps); Webster's Third New International Dictionary 2267 (1986) ("structure" defined as something constructed or built). Further, removal of all structures or parts thereof, constructed in violation of CAMA or the rules promulgated pursuant thereto, is necessary to accomplish the purpose of the Act; otherwise, the permit-letting provisions of CAMA would be read as mere guidelines rather than strict requirements. See, e.g., Campbell v. Church, 298 N.C. 476, 484, 259 S.E.2d 558, 564 (1979) (legislative intent may be determined from the language as well as the nature and purpose of the act and the consequences which would follow from a construction one way or another, and the court should always construe the provisions of a statute in a manner which will tend to prevent it from being circumvented). For these reasons, we hold that the court should have ordered removal of the retaining wall and the eight by eight inch capboard enlargement to the bulkhead, once it found that these structures were built in violation of CAMA.

[6] Finally, defendant suggests that the unauthorized filling of wetlands on her property did not so significantly disrupt the adjacent marshlands that the court should order restoration. Defendant refers to the site as postage-stamp sized. CAMA does not merely regulate significant development, however, but all development in

our coastal wetlands, so as to "insure the orderly and balanced use and preservation of our coastal resources on behalf of the people of North Carolina and the nation." N.C.G.S. § 113A-102(b)(3).

For the reasons stated, we hold that the trial court erred in ordering only partial removal of the structures defendant erected and the fill deposited therein, in violation of CAMA and DFA, and the Court of Appeals erred in affirming the trial court. Accordingly, the decision of the Court of Appeals is reversed and the case is remanded to the Court of Appeals with instructions to remand to the Superior Court, Carteret County, for entry of an order consistent with this opinion enjoining defendant to remove all structures and fill violative of CAMA and DFA.

REVERSED AND REMANDED.