MARY B. BLACKMON, ADMINISTRATRIX OF THE ESTATE OF BOBBY T. BLACKMON, DECEASED, PLAINTIFF v. NORTH CAROLINA DEPARTMENT OF CORRECTION, EMPLOYER; AND/OR NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, DEFENDANTS

No. 9410IC558

(Filed 16 May 1995)

**Workers' Compensation §§ 41, 57 (NCI4th)— death of inmate—entitlement to workers' compensation benefits— wrongful death claim under Tort Claims Act barred**

Because an inmate suffered accidental death arising out of and in the course and scope of the employment to which he had been assigned by the Department of Corrections, plaintiff was entitled to compensation under the Workers' Compensation Act and was thus barred by N.C.G.S. § 97-10.1 from pursuing her wrongful death claim under the Tort Claims Act. N.C.G.S. § 97-13(c).

**Am Jur 2d, Workers' Compensation §§ 62, 64-66, 162.**

Judge GREENE dissenting.

Appeal by defendants from order filed 15 March 1994 by the North Carolina Industrial Commission. Heard in the Court of Appeals 4 October 1994.

**BLACKMON v. N.C. DEPT. OF CORRECTION**

[118 N.C. App. 666 (1995)]

*Hugh B. Lewis for plaintiff-appellee.*

*Attorney General Michael F. Easley, by Assistant Attorney General Richard L. Griffin, for defendant-appellants.*

JOHN, Judge.

Defendants appeal an award by the North Carolina Industrial Commission (the Commission) of damages to plaintiff under the North Carolina Tort Claims Act (the Tort Claims Act). For the reasons set forth herein, we reverse the decision of the Commission.

Pertinent facts and procedural information are as follows: Decedent Bobby Blackmon (Blackmon) was an inmate incarcerated within the North Carolina Department of Correction (DOC) at Yancey Correctional Center. Blackmon worked with a medium custody road crew assigned to the Madison County Section of the North Carolina Department of Transportation (DOT).

On 6 November 1990, the DOT foreman supervising Blackmon's crew instructed the inmates to break up and remove road salt from a double storage bin, a wooden structure built of treated lumber and located on the side of a mountain immediately above the DOT maintenance yard. The bin is raised eight (8) feet from the ground on stilts, and measures 34 feet from side to side, 17 feet from front to back, and 14 feet from top to bottom. It consists of two large compartments, each capable of holding approximately 75 tons of road salt. Access to the top of the bin is through plywood doors. Removal of salt is accomplished by backing a truck beneath the bin and opening metal doors on the bottom so as to allow salt to fall through a chute.

Because the bin is neither airtight nor waterproofed, salt stored therein tends to harden and crystallize and often will not fall readily through the chute. Standard DOT procedure for dealing with this circumstance is for workers to stand inside the bin atop the hardened salt smashing it with crowbars until the salt flows evenly.

Blackmon and another inmate were directed to loosen salt in the foregoing manner. As Blackmon moved along the salt crust surface, it suddenly broke beneath him and he dropped into the salt pile. Although other inmates attempted to extricate Blackmon, he eventually disappeared from view. Further rescue efforts were ineffectual, and Blackmon subsequently died from asphyxiation.

Mary Blackmon, Blackmon's mother and administratrix of his estate, instituted this action 11 February 1991 by filing an affidavit with the Commission alleging a tort claim against DOT and DOC and seeking $100,000.00 in damages for the wrongful death of Blackmon. Defendants answered 11 March 1991 disavowing any liability, and further moved to dismiss based upon lack of subject matter jurisdiction 4 April 1991. The motion asserted that provisions of the Workers' Compensation Act (the Act) barred plaintiff from proceeding under the Tort Claims Act for wrongful death. Defendants' motion was denied by Deputy Commissioner Edward Garner, Jr. 13 August 1991.

On 18 March 1992, plaintiff's claim was heard on its merits before Deputy Commissioner Gregory M. Willis. He concluded "[p]laintiff has failed to prove that [state employees] injured the decedent as a result of their negligence while acting within the scope of their employment with the Department of Transportation or Department of Correction . . . ," and awarded no damages to plaintiff. Plaintiff appealed this decision to the full Commission.

The Commission, in an order written by Commissioner James J. Booker, concluded the following:

1. N.C.G.S. §97-13(c) is not a bar to an action for wrongful death of a prisoner brought under the North Carolina Tort Claims Act. Ivey v. North Carolina Prison Dept., 252 N.C. 615, 114 S.E.2d 812 (1960).

. . . .

4. The North Carolina Industrial Commission is to determine negligence under the Tort Claims Act by using the same rules as those applicable to private parties. N.C.G.S. §143-291; Bolkhir v. North Carolina State Univ., 321 N.C. 706, 365 S.E.2d 898 (1988). Negligence is the failure to exercise the degree of care for others' safety which a reasonably prudent person, under like circumstances, would exercise. Sparks v. Phipps, 255 N.C. 657, 122 S.E.2d 496 (1961).

. . . .

6. The undersigned are persuaded by the accident investigation report by Ed Preston which concluded that the procedure used for cleaning the salt bins posed a serious risk of injury or death to workers. As such, defendants were negligent in using such a procedure, given the design of the bins, that no safety

equipment was used or was even made available to workers, and that there was no possible way to rescue someone without putting the rescuers in serious danger themselves.

7. Because defendants' negligence caused the wrongful death of decedent, the claimant is entitled to compensation under the North Carolina Tort Claims Act at the present value loss of earnings, fringe benefits, and household services of decedent.

Based on these determinations, the Commission awarded plaintiff $73,685.00 in damages. Defendants gave notice of appeal to this Court 30 March 1994.

Defendants' basic assignment of error focuses upon Commissioner Booker's conclusion that N.C. Gen. Stat. § 97-13(c) does not operate to bar plaintiff's wrongful death action brought under the Tort Claims Act.

The statute at issue provides in pertinent part:

This Article shall not apply to prisoners being worked by the State . . . , except to the following extent: Whenever any prisoner assigned to the State Department of Correction shall suffer . . . accidental death arising out of and in the course of the employment to which he had been assigned, if there be death . . . the dependents or next of kin . . . may have the benefit of this Article by applying to the Industrial Commission as any other employee; provided, such application is made within 12 months from the date of the discharge; and provided further that the maximum compensation to . . . the dependents or next of kin of any deceased prisoner shall not exceed thirty dollars ($30.00) per week and the period of compensation shall relate to the date of his discharge rather than the date of the accident. . . . The provisions of G.S. 97-10.1 and 97-10.2 shall apply to prisoners and discharged prisoners entitled to compensation under this subsection and to the State in the same manner as said section applies to employees and employers.

N.C. Gen. Stat. § 97-13(c) (1991).

N.C. Gen. Stat. § 97-10.1 (1991) states:

If the employee and the employer are subject to and have complied with the provisions of this Article, then the rights and remedies herein granted to the employee, his dependents, next of kin,

or personal representative shall exclude all other rights and remedies of the employee, his dependents, next of kin, or representative as against the employer at common law or otherwise on account of such injury or death.

Read *in pari materia*, the terms of these statutes indisputably dictate two major consequences in the circumstances *sub judice*: 1) because Blackmon suffered accidental death arising out of and in the course of the employment to which he was assigned, plaintiff "may have the benefit" of the Workers' Compensation Act; and 2) if such opportunity to seek redress constitutes being "entitled to compensation" under the Act, plaintiff is excluded from maintaining a wrongful death action against defendants "at common law or otherwise," *i.e.*, under the Tort Claims Act. Should the latter issue be resolved against plaintiff, her appeal fails. We conclude plaintiff's action is indeed barred.

Plaintiff emphasizes the word "may" in the statute and asserts use of the term constitutes a permissive option, allowing her a choice of claiming under the Act or proceeding under the Tort Claims Act. While "may" indisputably leaves the decision regarding whether or not to file *any* workers' compensation claim with plaintiff, her argument takes the word "may" out of context and further ignores the implications of the phrase "entitled to compensation."

G.S. § 97-13(c) commences with the prohibitory statement that it "shall not apply to prisoners being worked by the State." Only thereafter does it set out those instances in which prisoners "may have the benefit" of the Act. Finally, it provides that the exclusive remedy provisions of G.S. § 97-10.1 *"shall apply* to prisoners . . . *entitled to compensation"* under the section.

"Where the words of a statute have not acquired a technical meaning, they must be construed in accordance with their common and ordinary meaning unless a different meaning is apparent or clearly indicated by the context in which they are used." *State v. Koberlein*, 309 N.C. 601, 605, 308 S.E.2d 442, 445 (1983) (citing *Lafayette Transportation Service, Inc. v. County of Robeson*, 283 N.C. 494, 196 S.E.2d 770 (1973)). "Entitle" is defined as to "qualify (one) for something" or to "furnish with proper grounds for seeking or claiming something." Webster's Third New International Dictionary 758 (1966).

When the statutory exceptions to non-applicability of the Act as set out in G.S. § 97-13(c) are met, the dependents or next of kin of a deceased inmate possess the "proper grounds for seeking or claiming" benefits thereunder and are therefore qualified, or more specifically *"entitled,"* to compensation under the Act. Because Blackmon was a prisoner who suffered "accidental death arising out of and in the course of the employment to which he had been assigned," his dependents or next of kin are statutorily "entitled" to specific benefits under the Act. Therefore, plaintiff, as a consequence of G.S. § 97-10.1, may not maintain a wrongful death action against defendants under the Tort Claims Act.

However, plaintiff and the dissent assert, as did the Commission, that *Ivey v. Prison Department*, 252 N.C. 615, 114 S.E.2d 812 (1960), requires a contrary result. Inmate Ivey was ordered by a camp Assistant Superintendent to help a department employee transport a sick prisoner to the prison hospital. *Id.* at 616, 114 S.E.2d at 813. While *en route* in a department truck, the employee failed to slow for a turn and lost control of the vehicle. *Id.* Ivey sustained severe injuries which eventually caused his death. *Id.* at 617, 114 S.E.2d at 813.

The administrator of Ivey's estate initiated a civil tort claim against the North Carolina Prison Department for wrongful death. The Department sought dismissal of the action on grounds that the prisoner's workers' compensation remedy was exclusive. *Id.* at 616, 114 S.E.2d at 812-13. This motion was allowed and the dismissal was later affirmed by the full Commission as well as the Superior Court. *Id.* at 617, 114 S.E.2d at 813.

At the time *Ivey* was appealed to the Supreme Court, G.S. § 97-13(c) read as follows:

Whenever any prisoner assigned to the State Prison Department shall suffer accidental injury arising out of and in the course of the employment to which he had been assigned, if the results of such injury continue until after the date of the lawful discharge of such prisoner to such an extent as to amount to a disability as defined in this article, then such discharged prisoner may have the benefit of this article by applying to the Industrial Commission as any other employee; provided, such application is made within twelve months from the date of discharge; and provided, further, . . . *no award other than burial expenses shall be made for any prisoner whose accident results in death . . . .*

G.S. § 97-13(c) (1958) (emphasis added). The statute had been amended in 1957 to provide further that N.C. Gen. Stat. § 97-10 applied to prisoners "entitled to compensation." G.S. § 97-10, predecessor to G.S. § 97-10.1, stated that plaintiff's remedy under the Workers' Compensation Act was exclusive of all other remedies.

The *Ivey* Court emphasized that the 1957 amendment applied only to prisoners "entitled to compensation," and that the term "compensation" meant "the money allowance payable to an employee or to his dependents as provided for in this article, and includes funeral benefits provided herein." N.C. Gen. Stat. § 97-2(11) (1958); *Ivey*, 252 N.C. at 619, 114 S.E.2d at 815. The Court concluded payment of burial expenses as provided in G.S. § 97-13(c) was at best only a part of compensation:

> To be sure, the definition [of compensation] includes burial expenses, but it takes the whole to constitute compensation and not one of its parts. A vest is a part of a suit of clothes, but a vest cannot be called a suit. Surely compensation for wrongful death involves more than the burial of the body.

*Id.* at 620, 114 S.E.2d at 815. Accordingly, the Court ruled Ivey was not a prisoner "entitled to compensation" and the exclusive remedy provisions in G.S. § 97-10 did not apply.

However, G.S. § 97-13(c) was thereafter amended in 1971 to delete the burial expenses limitation of workers' compensation relief for prisoners killed in the scope of employment with DOC. The statute now provides for payment of $30.00 per week to the dependents or next of kin of a deceased prisoner, which provision comports with the unamended statutory definition of compensation. *See* G.S. § 97-2(11) (1994). " 'Compensation,' in the connection in which it is used in the Act, means a money relief afforded according to the scale established and for the persons designated in the Act," *Branham v. Panel Co.*, 223 N.C. 233, 236, 25 S.E.2d 865, 867 (1943), and the amount to be awarded a claimant is based on lost earning capacity, *Ashley v. Rent-A-Car Co.*, 271 N.C. 76, 83, 155 S.E.2d 755, 761 (1967) (citation omitted).

" 'When courts are called upon to interpret [statutes], the words selected by the Legislature should be given their generally accepted meaning unless it is manifest that such definition will do violence to legislative intent.' " *Bear v. Bear*, 3 N.C. App. 498, 504, 165 S.E.2d 518, 522 (1969) (quoting *Bleacheries Co. v. Johnson, Comm'r of Revenue,*

**BLACKMON v. N.C. DEPT. OF CORRECTION**

[118 N.C. App. 666 (1995)]

266 N.C. 692, 694, 147 S.E.2d 177, 179 (1966)). Construing the 1971 amendment as providing compensation under the Act does no violence to legislative intent. "It is well settled that the intent of the Legislature controls the interpretation of a statute." *Pipeline Co. v. Neill*, 296 N.C. 503, 508, 251 S.E.2d 457, 460 (1979) (citing *Underwood v. Howland*, 274 N.C. 473, 164 S.E.2d 2 (1968)). "In construing a statute with reference to an amendment, it is presumed that the Legislature intended either (1) to change the substance of the original act or (2) to clarify the meaning of it." *Id.* at 509, 251 S.E.2d at 461 (citing *Childers v. Parker's, Inc.*, 274 N.C. 256, 162 S.E.2d 481 (1968)). As there was no ambiguity in the restriction by previous G.S. § 97-13(c) of compensation to burial expenses, it follows that the 1971 amendment was intended to change the substance of the Act. *See Insurance Co. v. Insurance Co.*, 276 N.C. 243, 249-50, 172 S.E.2d 55, 59 (1970).

Moreover, it is appropriate to assume the legislature is aware of any judicial construction of a statute. *Watson v. N.C. Real Estate Comm.*, 87 N.C. App. 637, 648, 362 S.E.2d 294, 301 (1987), *cert. denied*, 321 N.C. 746, 365 S.E.2d 296 (1988) (citation omitted). The *Ivey* Court determined that mere recovery of burial expenses under the Act did not constitute "compensation." The subsequent legislative decision to provide weekly monetary benefits to inmates killed in the course of employment with DOC may logically only be interpreted as affording such claimants "compensation," thereby bringing them under the limitations of G.S. § 97-10.1 "in the same manner" as all other employees.

Finally, this interpretation of G.S. § 97-13(c) is in accordance with the policy behind workers' compensation and the spirit of the Act.

> The Act represents a compromise between the employer's and employee's interests. The employee surrenders his right to common law damages in return for guaranteed, though limited, compensation. The employer relinquishes the right to deny liability in return for liability limited to the employee's loss of earning capacity.

*Whitley v. Columbia Lumber Mfg. Co.*, 318 N.C. 89, 98-99, 348 S.E.2d 336, 341 (1986). Restricting "compensation" to loss of the decedent inmate's earning capacity, however limited by the fact of incarceration, effectuates the statutory compromise between employer and employee.

Plaintiff nevertheless insists the 1971 amendment (providing compensation in the amount of $20.00 per week) affords deceased prisoners in the situation of Blackmon a "full suit of clothes, but with short pants," and cites *Oxendine v. Dept. of Correction*, I.C. No. TA-12513 at 4 (December 16, 1992) as support for her challenge to the sufficiency of such benefits. We first emphasize that conclusions from the Commission are not binding upon appellate courts, *see Hayes v. Elon College*, 224 N.C. 11, 15, 29 S.E.2d 137, 139 (1944), and also point out that policy decisions such as the amount of benefits are matters for the legislative branch of government and not the judicial. *Gardner v. N. C. State Bar*, 316 N.C. 285, 293, 341 S.E.2d 517, 522 (1986) (citation omitted).

In addition, plaintiff makes passing reference to a constitutional argument alleging denial of her rights guaranteed under the Equal Protection Clause of the Fourteenth amendment. As this issue was not raised below, we do not consider it here. N.C.R. App. P. 10(b)(1). Further, as plaintiff has asserted no claim under *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991), we likewise do not address the effect of the exclusivity provisions of G.S. § 97-10.1 on such claim.

Finally, plaintiff cites this Court's opinion in *Tanner v. Dept. of Correction*, 19 N.C. App. 689, 200 S.E.2d 350 (1973) in support of her proposition that she is entitled to pursue a negligence claim under the Tort Claims Act. First, the *Tanner* decision in no way addresses the fundamental question at issue herein. Moreover, Tanner's claim was for injury, not accidental death, and it is unclear whether he was "discharged" at the time of pursuing his tort claim so as arguably to implicate G.S. § 97-13(c) and G.S. § 97-10.1. *Tanner* is thus inapposite to the circumstance *sub judice*. We hold only that because DOC inmate Blackmon suffered accidental *death* arising out of and in the course and scope of the employment to which he had been assigned by DOC, plaintiff is "entitled to compensation" under the Act and is thus barred by G.S. § 97-10.1 from pursuing her wrongful death claim under the Tort Claims Act.

Based on the foregoing, the award by the Commission to plaintiff of damages under the Tort Claims Act is reversed.

Reversed.

Judge WYNN concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

I disagree with the majority's opinion that the provisions of the Workers' Compensation Act bar plaintiff's wrongful death claim under the Tort Claims Act.

The majority correctly points out that when *Ivey* was decided, Section 97-13(c) only allowed "burial expenses . . . for any prisoner whose accident results in death." Although our Supreme Court did determine that burial expenses are not compensation, this determination was not the basis for the Supreme Court's decision in *Ivey* to allow a prisoner who accidentally died while on assigned work to bring a claim under the Tort Claims Act. The Court was explicit in holding:

> the plaintiff's right to have the tort claim heard and passed on has not been withdrawn [by the amendment to 97-13 which provided the exclusivity provisions of 97-10 apply to prisoners "entitled to compensation"]. If the Legislature intended to exclude prisoners, all it had to do was pass a simple amendment to the Tort Claims Act saying, "prisoners assigned by the courts to work under the State Prison Department are excluded." Intention to withdraw a prisoner's right to assert a tort claim cannot be presumed as a result of the amendment to the Work[er]'s Compensation Act in its present form and setting.

*Ivey*, 252 N.C. at 620, 114 S.E.2d at 815.

Although the Workers' Compensation Act has been amended to delete the burial expenses limitation when a prisoner is accidentally killed, this amendment does not address the concerns expressed by the Court in *Ivey* or the reasons for its decision. Despite the decision in *Ivey* which makes a clear call to the Legislature to amend the Tort Claims Act if it wants to exclude prisoners from coverage, and despite having amended both the Workers' Compensation Act and the Tort Claims Act since *Ivey*, the Legislature, for more than thirty years since the *Ivey* decision, has not acted to exclude prisoners from the provisions of the Tort Claims Act. *See Hewitt v. Garrett*, 274 N.C. 356, 361, 163 S.E.2d 372, 375 (1968) (failure of Legislature to change statute in more than thirty years following Supreme Court's interpretation of statute suggest that the "law-making body is satisfied with the [Court's] interpretation). Furthermore, the Legislature has not altered the basic framework of 97-13(c) which creates an exception to the Workers' Compensation Act to allow coverage for prisoners

accidentally injured or killed while on assigned work and which then places limitations on that coverage. N.C.G.S. § 97-13(c). Section 97-13(c) is today, as it was at the time of *Ivey*, a "jumbled and confusing subsection which is an exception followed by two provisos to the section of the Work[er]'s Compensation Act." *Ivey*, 252 N.C. at 619, 114 S.E.2d at 815. Therefore, if the Legislature desires the Workers' Compensation Act to be the exclusive remedy for prisoners accidentally injured or killed while on assigned work, it either needs to amend the Tort Claims Act as suggested by the Court in *Ivey* or change Section 97-13(c) to treat working prisoners as regular employees rather than as an exception to the Workers' Compensation Act. Because the Legislature has not amended the Tort Claims Act to exclude working prisoners, and the treatment of working prisoners under the Worker's Compensation Act as an exception is still in place, the concerns expressed by the Court in *Ivey* continue to exist. For these reasons, I would affirm the Industrial Commission's decision that the claimant is entitled to compensation under the Tort Claims Act.