DENNIS WILLOUGHBY, Petitioner v. THE BOARD OF TRUSTEES OF THE TEACHERS' AND STATE EMPLOYEES' RETIREMENT SYSTEM, Respondent

No. COA94-1066

(Filed 6 February 1996)

**1. Administrative Law and Procedure § 65 (NCI4th)— state agency's interpretation of statutory term affirmed by trial court—standard of review on appeal**

When the issue on appeal is whether the trial court erred in affirming a state agency's interpretation of a statutory term, the Court of Appeals applies *de novo* review.

**Am Jur 2d, Administrative Law §§ 614-618.**

**2. Public Officers and Employees § 59 (NCI4th)— State disability benefits—reduction by amount of SSA benefits— net rather than gross amount offset**

Under N.C.G.S. § 135-106(b), the amount by which petitioner's long term State disability benefits should be offset due to petitioner's receipt of Social Security disability benefits should not be the gross amount of those benefits but should instead be the net amount of those benefits after deduction of attorney's fees

and costs associated with obtaining the disability insurance benefits from the Social Security Administration. As used in § 135-106(b), the word "primary" refers to benefits directly received by the disabled person, and petitioner was not "entitled" to the portion of disability benefits statutorily reserved for his attorney.

**Am Jur 2d, Civil Service § 48; Social Security and Medicare § 240.**

Appeal by petitioner from order entered 25 July 1994 by Judge Jack A. Thompson in Brunswick County Superior Court. Heard in the Court of Appeals 17 October 1995.

Petitioner, Dennis Willoughby, was formerly employed by the State of North Carolina before a disabling illness forced him to retire. Upon becoming disabled, petitioner applied for and began receiving long term disability benefits pursuant to G.S. 135-106(b). Petitioner also sought disability insurance benefits from the Social Security Administration ("SSA") pursuant to 42 U.S.C. § 423.

G.S. 135-106(b) provides that long term disability benefits are subject to a reduction in the amount of primary Social Security Disability Benefits received from the SSA. The SSA denied petitioner's initial application for disability benefits. Petitioner's claim was again denied upon his request for reconsideration by the SSA. Petitioner then requested that his claim be heard before an SSA Administrative Law Judge. In preparing for hearing, petitioner retained attorney Kathleen Shannon Glancy to represent his interests and agreed that attorney Glancy would receive a reasonable attorney's fee of twenty-five percent of any past due benefits in the event that petitioner's claim was approved by the SSA. Petitioner also agreed to reimburse attorney Glancy for any costs incurred while pursuing petitioner's claim.

After the hearing, petitioner's claim was approved. The attorney's fee amounting to one-quarter of petitioner's past due benefits, or $3,445.25, was not paid to petitioner, but was withheld for petitioner's attorney pursuant to 42 U.S.C. § 406. Attorney Glancy then petitioned the SSA on her own behalf seeking disbursement of the $3,445.25 attorney's fee. Attorney Glancy's petition was approved and the SSA paid the funds directly to attorney Glancy. Petitioner then directly reimbursed attorney Glancy $219.00 for costs incurred in pursuing petitioner's claim.

Upon approval of petitioner's claim by the SSA, the Retirement Systems Division of the Department of the State Treasurer, which administers the State Disability Income Plan, calculated the amount by which petitioner's State disability benefits should be offset due to petitioner's receipt of SSA disability benefits. The offset applied to future benefits, but also included the past due benefits awarded to petitioner. With regard to the past due benefits, the Retirement Systems Division calculated the offset based on the gross amount of past due benefits awarded rather than the net amount after the attorney's fees were withheld.

Petitioner requested an administrative hearing pursuant to G.S. 135-106(b), alleging that the Retirement Systems Division erred in calculating the offset. On 20 September 1993, Administrative Law Judge Thomas R. West recommended that the agency find that it erred in calculating the offset applicable to petitioner. On 8 November 1993, however, the agency issued its final decision holding that it had correctly determined petitioner's offset. Petitioner appealed to the Brunswick County Superior Court, which affirmed the final agency decision.

Petitioner appeals.

*Kathleen Shannon Glancy, P.A., by Barbara von Euler and James William Snyder, Jr., for petitioner-appellant.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General Alexander McC. Peters, for respondent-appellee.*

EAGLES, Judge.

Petitioner's appeal is before us pursuant to G.S. 150B-52 and 7A-27. We are cognizant of the decision of this Court in *Dockery v. N.C. Dept. of Human Resources*, 120 N.C. App. 827, 463 S.E.2d 580 (1995), which indicates that this Court might be applying two different standards of review of administrative decisions. In *Dockery*, Arnold, C.J., speaking for this Court, stated that:

While *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 443 S.E.2d 114 (1994), might appear to state a new and different standard of review of administrative agency decisions at the appellate level, the standard of review is long-standing and has been correctly and lately followed in several recent cases, *e.g., Wilkie v. Wildlife Resources Commission*, 118 N.C. App. 475, 455 S.E.2d 871 (1995); *Brooks v. Ansco & Associates*, 114

N.C. App. 711, 443 S.E.2d 89 (1994); *Teague v. Western Carolina University*, 108 N.C. App. 689, 424 S.E.2d 684, *disc. review denied*, 333 N.C. 466, 427 S.E.2d 627 (1993).

*Dockery*, 120 N.C. App. at 829, 463 S.E.2d at 582. It appears that the different approaches referred to in *Dockery* culminated in the filing of two divergent decisions of this Court on the same day. Compare *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 443 S.E.2d 114 (1994) *with Brooks v. Ansco Associates*, 114 N.C. App. 711, 443 S.E.2d 89 (1994).

One line of cases has determined that our scope of review, as well as that of the superior court, is governed by G.S. 150B-51. *See Dockery*, 120 N.C. App. at 829, 463 S.E.2d at 582; *In re Appeal of Ramseur*, 120 N.C. App. 521, 463 S.E.2d 254, 256 (1995); *Brooks v. Ansco Associates*, 114 N.C. App 711, 716, 443 S.E.2d 89, 91-92 (1994). According to that analysis, the scope of review applied by the superior court and this Court depends upon the question presented.

> If it is alleged that the agency's decision was based on an error of law, then *de novo* review is required. If, however, it is alleged that the agency's decision was not supported by the evidence or that the decision was arbitrary or capricious, then the reviewing court must apply the "whole record" test.

*Ramseur*, 120 N.C. App. at 524, 463 S.E.2d at 256.

The second line of cases holds that this Court reviews the superior court decision for errors of law just as in any other civil case. *See Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 675, 443 S.E.2d 114, 118 (1994); *In re Appeal by McCrary*, 112 N.C. App. 161, 165, 435 S.E.2d 359, 363 (1993). According to that analysis, our review "is limited to whether the Superior Court made any errors in law in light of the record as a whole." *Scroggs v. N.C. Crim. Justice Standards Comm.*, 101 N.C. App. 699, 702, 400 S.E.2d 742, 744 (1991), (citing *Henderson v. N.C. Dept. of Human Resources*, 91 N.C. App. 527, 531, 372 S.E.2d 887, 890 (1988)).

We are also aware that one panel of this Court may not overrule a decision rendered by any previous panel. *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 36 (1989). As a result we have carefully reviewed the instant case in accordance with each of the standards referred to and have determined that the outcome of this case is the same under both.

The sole issue here is whether under G.S. 135-106(b) the amount of the offset should be the gross amount of disability insurance benefits under the SSA or the net amount of those benefits after deduction of attorney's fees and costs associated with obtaining the disability insurance benefits from the SSA. G.S. 135-106(b) provides in pertinent part:

> After the commencement of benefits under this section, the benefits payable under the terms of this section shall be equal to sixty-five percent (65%) of 1/12th of the annual base rate of compensation last payable to the participant or beneficiary prior to the beginning of the short-term disability period as may be adjusted for percentage increases as provided under G.S. 135-108, plus sixty-five percent (65%) of 1/12th of the annual longevity payment to which the participant or beneficiary would be eligible, to a maximum of three thousand nine hundred dollars ($3,900) per month *reduced by any primary Social Security disability benefits and by monthly payments for Workers' Compensation to which the participant or beneficiary may be entitled.*

G.S. 135-106(b) (1993) (emphasis added). The trial court affirmed without opinion the final agency decision of the Board of Trustees of the Teachers' and State Employees' Retirement System ("Board") which held that the outcome of this case hinged on the interpretation of the word "primary" in G.S. 135-106(b). Specifically, the Board made the following pertinent conclusions of law:

> 4. "Primary" is defined as "first or highest in rank or importance; first in order of any series, sequence, etc.: first in time, earliest; original, not derived or subordinate, fundamental, basic." The Random House Dictionary of the English Language, 1142 (Unabridged ed. 1966).

> 5. Applying the "ordinary meaning test" to the word "primary" in G.S. 135-106(b), the General Assembly must be presumed to have meant by the term "primary Social Security disability benefits" the original, basic benefits, prior to any offset, available to a disabled person.

> 6. The fact that the Social Security Act, for the convenience of the applicant and of attorneys, requires that one-quarter of retroactive benefits be withheld from the applicant and paid directly to the attorney as attorney fees does not change the fact that such withheld benefits are still a portion of the total benefits that the

applicant should have received had the disability application been approved initially.

7: By requiring that long-term disability benefits be offset by "any primary Social Security benefits . . . to which the participant or beneficiary may be entitled . . ." the General Assembly has clearly indicated its intent that the offset be in the amount of the gross benefit payable to the Petitioner, prior to any withholding for payment of attorney fees.

Respondent argues that the Board's interpretation of G.S. 135-106(b) was correct and therefore that the trial court did not err in affirming the Board's final decision. We disagree.

[1] An incorrect statutory interpretation constitutes an error of law. When the issue on appeal is whether the trial court erred in affirming a state agency's interpretation of a statutory term, we apply de novo review. *Amanini*, 114 N.C. App. at 678, 443 S.E.2d at 120. *But see Dockery*, 120 N.C. App. at 829, 463 S.E.2d at 582. When a statute is ambiguous, as it is here, the "primary rule of statutory construction is that the intent of the legislature controls the interpretation of a statute." *Tellado v. Ti-Caro Corp.*, 119 N.C. App. 529, 533, 459 S.E.2d 27, 30 (1995) (citing *Derebery v. Pitt County Fire Marshall*, 318 N.C. 192, 196, 347 S.E.2d 814, 817 (1986)). "To determine this intent, the courts should consider the language of the statute, the spirit of the act, and what the act seeks to accomplish." *Id.* We must ensure that "the purpose of the legislature in enacting [the statute], sometimes referred to as legislative intent, is accomplished." *Commissioner of Insurance v. Automobile Rate Office*, 293 N.C. 365, 392, 239 S.E.2d 48, 65 (1977).

[2] The statute in question here, G.S. 135-106(b), is a part of the Disability Income Plan of North Carolina. G.S. 135-100(b) states that the purpose of the Disability Income Plan as a whole "is to provide equitable replacement income for eligible teachers and employees who become temporarily or permanently disabled for the performance of their duty prior to retirement . . . ." G.S. 135-100(b) (1987). Accordingly, we recognize that G.S. 135-106(b) is a remedial statute, and we construe the statute liberally so as to best effectuate the stated remedial goal of providing equitable replacement income for disabled employees. *Sutton v. Aetna Casualty & Surety Co.*, 325 N.C. 259, 263, 382 S.E.2d 759, 762 (1989).

We first address respondent's contention that the term "primary" essentially means "gross" with respect to primary Social Security disability benefits that must be offset pursuant to G.S. 135-106(b). Respondent asserts that "primary" should be given its ordinary meaning of "first or highest in rank or importance . . . ." *The Random House Dictionary of the English Language*, 1142 (Unabridged ed. 1966). Given this ordinary meaning, respondent then contends that in the context of G.S. 135-106(b), "primary" benefits are those "original, basic benefits, prior to any withholding . . . ." We disagree.

"Where the words of a statute have not acquired a technical meaning, they must be construed in accordance with their common and ordinary meaning unless a different meaning is apparent or clearly indicated by the context in which they are used." *State v. Koberlein*, 309 N.C. 601, 605, 308 S.E.2d 442, 445 (1983) (citing *Transportation Service v. County of Robeson*, 283 N.C. 494, 502, 196 S.E.2d 770, 775 (1973)). Here, we recognize that the term "primary" has acquired a sort of technical meaning. Nevertheless, we conclude that any technical meaning of "primary" does not conflict with the ordinary dictionary meaning of "primary." We conclude that "primary" as used in G.S. 135-106(b) refers to benefits directly received by the disabled person. *See Redden v. Celebrezze*, 370 F.2d 373, 375 (4th Cir. 1966). This is as opposed to "secondary" benefits, which are derivative benefits that may be paid to a disabled worker's spouse, children, or family under certain circumstances.

This primary/secondary distinction is recognized elsewhere in the law as well. For example, one who signs a loan is primarily or directly liable, while a guarantor on that loan is only secondarily or derivatively liable because the guarantor's secondary liability is contingent on the actions or omissions of the primarily liable party. *E.g., Forsyth Co. Hospital Authority v. Sales*, 82 N.C. App. 265, 266-67, 346 S.E.2d 212, 214, *disc. review denied*, 318 N.C. 415, 349 S.E.2d 594 (1986). The same is true in the disability context. For those beneficiaries who would receive secondary benefits, their receipt of benefits is contingent on the disabled status of the injured worker. *See* 42 U.S.C. § 402(b)-(d) (1988 & Supp. 1995).

Even under a strict "ordinary meaning" analysis, respondent's argument would fail. Certainly, benefits received by the worker who actually suffered the disability would qualify as benefits that are "first or highest in rank or importance." This is especially true in light of the statutory purpose of providing equitable replacement income for dis-

abled employees. *Sutton*, 325 N.C. at 263, 382 S.E.2d at 762. Moreover, the term "primary" would not ordinarily be used unless there was also a "secondary" classification. Respondent does not contend that "secondary" benefits are "net" benefits, nor does such a contention seem plausible. Accordingly, we conclude that "primary," as it is used in G.S. 135-106(b), describes those benefits accruing directly to the disabled worker.

Having concluded that "primary" is not synonymous with "gross," we recognize that the crucial word here is "entitled." As we have noted, G.S. 135-106(b) requires that a claimant's State disability payments be "reduced by any primary Social Security disability benefits . . . to which the participant or beneficiary may be entitled." G.S. 135-106(b) (1993). Here again, we must determine whether the term has acquired a technical meaning. If it has not, we must give the term its ordinary meaning as it comports with the context of the statute. *Koberlein*, 309 N.C. at 605, 308 S.E.2d at 445.

In the Workers' Compensation context, the term "entitle" has been construed in accordance with its ordinary meaning. *Blackmon v. N.C. Dep't of Correction*, 118 N.C. App. 666, 670, 457 S.E.2d 306, 309 (1995). The *Blackmon* court defined the ordinary meaning of "entitle" as to " 'qualify (one) for something' or to 'furnish with proper grounds for seeking or claiming something.' " *Id.* (quoting *Webster's Third New International Dictionary* 758 (1966)). We conclude that "entitle" has acquired no technical meaning in G.S. 135-106(b), and that "entitle" accordingly must be given its ordinary meaning here as well.

Applying this ordinary definition, it is clear that upon approval of his application by the SSA, petitioner became entitled to receipt of at least a portion of the Social Security disability benefits in question. The question remains, however, as to whether petitioner must be deemed entitled to the full amount of disability benefits despite the fact that petitioner had no right to possess the twenty-five percent portion of his benefits that was statutorily reserved for petitioner's attorney. We conclude that petitioner was not "entitled" to the portion of disability benefits statutorily reserved for petitioner's attorney.

One who is "entitled" has a right superior to all others. For example, while third parties may assert claims against petitioner for SSA funds to which petitioner is entitled, so long as that third party claim must be made against petitioner in order to recover, petitioner must

still be deemed entitled to the funds. The distinction is one of priority. In other words, where a third party claimant's right to a portion of petitioner's benefits is contingent upon petitioner first possessing the benefits in question, petitioner remains entitled to the benefits. Where a third party claimant can bypass petitioner in the hierarchy, however, and successfully assert its claim directly with the SSA, the third party claimant has a right to that portion of the disability benefits superior to petitioner's right and therefore petitioner is not "entitled" to that portion within the meaning of G.S. 135-106(b). Accordingly, since petitioner's attorney here has a right superior as against petitioner to the attorney's fee and since petitioner's attorney must claim her fee directly from the SSA, petitioner is not entitled within the meaning of G.S. 135-106(b) to the amount statutorily reserved for the attorney's fee.

Note that we distinguish between attorney's fees and costs of litigation. 42 U.S.C. § 406 does not provide for costs to be withheld and paid directly to petitioner's attorney. Petitioner must pay those costs, $219.00 in this case, out of petitioner's own funds regardless of source. Petitioner's attorney's claim is against petitioner for those costs. Accordingly, petitioner is deemed entitled under G.S. 135-106(b) to the $219.00 he must ultimately expend for costs in this case.

This construction of G.S. 135-106(b) is consistent with the statutory intent of providing equitable replacement income to disabled North Carolina teachers and state employees. For the reasons stated, we reverse and remand for entry of a decision consistent with this opinion.

Reversed and remanded.

Judges WYNN and SMITH concur.