***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and arguments of the parties. The appealing party has shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission REVERSES the Opinion and Award of Deputy Commissioner Baddour and enters the following Opinion and Award.
 *********** *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in an executed Pre-Trial Agreement as:
 STIPULATIONS
1. All parties are properly before the Commission, and this is the Court of proper jurisdiction for this action.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. On the date of injury, the parties were subject to, and bound by, the provisions of the North Carolina Workers' Compensation Act.
4. At all relevant times, an employment relationship existed between the parties.
5. The NC Department of Agriculture is self-insured. Key Risk Management Services, Inc. is the administering agent.
6. All of plaintiff's medical records will be submitted as a Stipulated Exhibit.
7. All Industrial Commission forms and filings will be submitted as a Stipulated Exhibit.
8. Plaintiff's average weekly wage is $511.60, subject to verification.
9. Plaintiff's alleged date of injury is July 12, 2005.
 *********** EVIDENTIARY RULINGS *Page 3 
Plaintiff's Motion to Strike the deposition testimony of Dr. David J. Weber is hereby DENIED.
Defendant's Motion to admit the North Carolina Medical Board License Verification Form for Dr. Joseph Jemsek is hereby GRANTED. The documentation is admitted as Defendant's Exhibit 1.
 *********** EXHIBITS
The following exhibits were admitted into evidence:
 (a) Stipulated Exhibit 1: Pre-Trial Agreement
 (b) Stipulated Exhibit 2: Plaintiff's Medical Records
 (c) Stipulated Exhibit 3: Industrial Commission Forms
 (d) Stipulated Exhibit 4: Plaintiff's Recorded Statement
 (e) Plaintiff's Exhibit 1: Photograph
 (f) Plaintiff's Exhibit 2: Photograph
 (g) Plaintiff's Exhibit 3: Photograph
 (h) Defendant's Exhibit 1: North Carolina Medical Board License Verification Form for Dr. Joseph Jemsek
 *********** ISSUES (a) Whether Plaintiff suffers from lyme disease which would qualify as a compensable occupational disease?
 (b) To what benefits is Plaintiff entitled?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following: *Page 4 
 FINDINGS OF FACT
1. Danny Spruill is the plaintiff and was 61 years of age as of the date of the hearing. His educational background includes a GED and two years of pipe welding training. His work background included military service in Vietnam and warehouse work prior to his employment with defendant-employer.
2. Plaintiff has worked for defendant-employer since 1998 at Tidewater Research Center as an agricultural assistant. This job is performed almost entirely outside, around farm animals and crops. Among other duties, plaintiff was responsible for maintaining ditch banks and fence lines to keep deer away from the crops.
3. Plaintiff and other workers had significant tick exposure in their employment. Plaintiff was routinely exposed to ticks and would find them on his clothes and attached to his body on a daily basis during warm weather. The problems were the worst in the summer months, and around the fence lines frequented by deer. Maintaining the fence lines was an important part of his job as deer were attracted to many of the crops grown at the Tidewater Research Center. The work of maintaining the fences was performed in the summer months including June and July. Plaintiff was doing a great deal of work with the fences in the month just prior to the onset of his symptoms.
4. Dwight Davenport, one of plaintiff's coworkers at Tidewater Research Center, confirmed that the duration of exposure to ticks was greater at work than one would generally experience outside of work. He had many of the same job duties and worked in the same environment as plaintiff. Mr. Davenport testified that there are ticks at the Tidewater Research Center and that they are "everywhere." Mr. Davenport's testimony is found to be credible. Based on the totality of the credible evidence, plaintiff was at an increased risk of tick bites as a *Page 5 
result of his employment with defendant compared to members of the general public not so employed.
5. In July of 2005, plaintiff experienced the onset of flu-like symptoms, headache, muscle and joint aches, chills, and a rash on his body which Dr. Jeon called an "erythematous macular type of rash." He presented to Dr. Myung Kil Jeon, his long-time treating physician for treatment on July 12, 2005, within a few days of the onset of his symptoms. Based on the clinical presentation, Dr. Jeon diagnosed probable lyme disease, and prescribed a course of antibiotics.
6. On July 14, 2005, plaintiff was hospitalized because his condition had worsened and he had developed meningitis. While hospitalized, he was treated with three different intravenous antibiotics for several weeks. Plaintiff's rash, headache, chills, and other flu-like symptoms improved, and he was released from the hospital. His final diagnosis was lyme disease and meningitis. However, plaintiff began to suffer from several other problems including concentration problems, memory loss, mental fog, temper problems, irregular heartbeat, worsening of his PTSD, and depression. Dr. Jeon referred plaintiff to several specialists to treat these problems, including Dr. Kathy Mayo, a psychiatrist, and Dr. Eric Carlson, a cardiologist.
7. Plaintiff's family members testified and the Full Commission finds as fact that plaintiff now suffers from significant problems with concentration and attention that severely limit his ability to engage in even routine tasks, such as paying bills. He also has difficulty with fatigue and maintaining sufficient focus to carry on a conversation.
8. In October of 2005, plaintiff attempted to return to work at his regular job. This return to work attempt lasted through June of 2006, when he was removed from work by Dr. *Page 6 
Mayo because of his aggravated PTSD, depression, and ongoing memory, concentration, and attention problems. Plaintiff has been unable to work since, and has been approved for Long Term Disability Benefits through the State Retirement System, following a period where he received Short Term Disability.
9. In this case, the experts agree, and the Full Commission finds as fact, that for all practical purposes, the only way one contracts lyme disease is through a tick bite. Lyme disease is associated with ticks from deer. The symptoms of lyme disease include fever, flu-like symptoms, muscle aches, arthralgia, cardiac problems, and meningitis. There is no dispute that the most recognizable symptom of lyme disease is a characteristic rash.
10. The Center for Disease Control (CDC) notes that lyme disease is generally diagnosed clinically based on symptoms, physical findings, and history of exposure to ticks. Laboratory testing is not required by the CDC for a valid lyme disease diagnosis. Also, the CDC recognizes that not all patients with lyme disease will recall a specific tick bite. The Full Commission gives greater weight to the Center for Disease Control Guidelines for diagnosis of lyme disease over the Infectious Disease Society of America g\Guidelines (IDSA).
11. Plaintiff underwent four laboratory tests for lyme disease which were negative. The CDC recognizes that tests performed early in the course of the disease may result in false negatives. The scientific literature submitted into evidence recognizes that testing administered after antibiotic treatment for the disease may also come back falsely negative. In Dr. Jeon's opinion, the test results do not mean that plaintiff does not have lyme disease. Dr. Jeon's opinions on the testing are supported by the scientific literature submitted in evidence, as well as by the CDC article on point. *Page 7 
12. Plaintiff's treating doctor, Dr. Jeon, opined and the Full Commission finds as fact that he more likely than not developed lyme disease as a result of tick exposure in his job. This opinion was based upon plaintiff's history of tick exposure, the nature of his symptoms, and the presence of his rash which was characteristic of lyme disease. Dr. Jeon was the only physician to testify in this case who actually witnessed plaintiff's rash, and was in the better position to make a clinical diagnosis. The evidence indicates that a number of scientific studies regarding the diagnosis, symptoms, and treatment of lyme disease further support Dr. Jeon's opinions.
13. Defendant retained Dr. David Weber, an infectious disease physician, to review the records in this case and offer opinions. Dr. Weber was of the opinion that plaintiff did not have lyme disease. Dr. Weber has never seen or treated the plaintiff and he held a number of assumptions regarding plaintiff's condition and exposures that were contrary to the facts. Also, Dr. Weber admitted that the treating physician is in the best position to make a diagnosis of lyme disease. Based on the greater weight of the evidence, the opinions of Dr. Jeon are given greater weight than the opinions of Dr. Weber.
14. Based upon the greater weight of the evidence, the Full Commission finds as fact that plaintiff more likely than not developed lyme disease as a result of exposure to ticks at work. While plaintiff, could, in theory, have developed lyme disease as a result of a tick bite sustained outside of work, his exposure to ticks at work was significantly greater than his exposure away from work.
15. Based on the greater weight of the evidence, the Full Commission find as fact that plaintiff was at a greater risk of developing lyme disease as a result of his employment compared to members of the general public not so employed. *Page 8 
16. Dr. Jeon opined, and the Full Commission finds as fact that plaintiff's lyme disease caused secondary meningitis, which in turn caused plaintiff's ongoing symptoms. The link between lyme disease and meningitis is well recognized in the medical literature.
17. Dr. Mayo, a board certified psychiatrist, began treating plaintiff in October of 2005. She diagnosed plaintiff with depression secondary to plaintiff's symptoms from lyme disease and meningitis. She also noted that plaintiff had preexisting post-traumatic stress disorder (PTSD) from serving in Vietnam. She opined, and the Full Commission finds as fact, that plaintiff's PTSD was substantially aggravated by his symptoms from lyme disease and meningitis including his persistent neurological problems.
18. Plaintiff was seen by Dr. Carlson for irregular heartbeats and cardiac symptoms that developed after the lyme disease diagnosis. Dr. Carlson opined, and the Full Commission finds as fact, that plaintiff's cardiac symptoms were caused by his lyme disease.
19. Plaintiff is at substantial risk of requiring future medical and psychiatric treatment as a result of his occupational disease and secondary medical conditions.
20. Plaintiff is at maximum medical improvement.
21. Plaintiff has been totally disabled from competitive employment during the periods between July 12, 2005 and October 22, 2005, and following June 29, 2006 (the end of his unsuccessful, trial return to work) on an ongoing basis as a result of his compensable occupational disease and secondary medical conditions.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW *Page 9 
1. Under N.C. Gen. Stat. § 97-53(13) in order to prove that a disease is an occupational disease plaintiff must show that (1) the disease is characteristic of and peculiar to the claimant's particular trade, occupation or employment; (2) the disease is not an ordinary disease of life to which the general public is equally exposed outside of employment; and (3) there is proof of causation.
 The first two elements are satisfied if, as a matter of fact, the employment exposed the worker to a greater risk of contracting the disease than the general public. The greater risk in such cases provides the nexus between the disease and the employment which makes them an appropriate subject for workmen's compensation.
Rutledge v. Tultex Kings Yarn,308 N.C. 85, 301 S.E.2d 359 (1983). In the present case, plaintiff has established by the greater weight of the evidence that his employment exposed him to a greater risk of tick bites and contracting Lyme's Disease than the general public. Therefore, plaintiff has met the first two prongs of establishing that he suffered from a compensable occupational disease.
2. A causal connection between a disease and plaintiff's occupation "must of necessity be based on circumstantial evidence."Booker v. Duke Medical Center,297 N.C. 458, 26 S.E.2d 189, (1979). "Among the circumstances which may be considered are the following: (1) the extent of exposure to the disease or disease-causing agents during employment, (2) the extent of exposure outside employment, and (3) absence of the disease prior to the work-related exposure as shown by the employee's medical history." Id. In the case at bar, the evidence establishes that plaintiff was exposed to ticks on a daily basis during tick season as a result of his employment with defendant-employer. Plaintiff's employment was performed almost entirely outside and in areas frequented by deer, and around tall grass. The evidence also establishes that plaintiff's exposures to ticks at work were greater than his exposure outside of work. *Page 10 
Accordingly, the greater weight of the evidence establishes that plaintiff developed lyme disease as a result of his occupational exposure to ticks. Id.
3. Plaintiff's lyme disease is a compensable occupational disease as he has proven, more likely than not, that exposures in his employment caused his lyme disease, and that his employment placed him at increased risk of contracting lyme disease as compared to members of the general public not so employed. N.C. Gen. Stat. § 97-53(13); Rutledge v. Tultex Kings Yarn,308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983).
4. Plaintiff's meningitis, neuropsychiatric symptoms, depression, PTSD, cardiac symptoms, and irregular heartbeat were either caused or aggravated by plaintiff's compensable lyme disease, rendering them compensable. Roper v. J.P. Stevens Co.,65 N.C. App. 69, 73, 308 S.E.2d 485, 488 (1983),disc. rev. denied, 310 N.C. 309, 312 S.E.2d 652 (1984).
5. An employee may prove disability in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but it would be futile because of pre-existing conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.Russell v. Lowes Product Distrib.,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). Plaintiff has proven he has been totally disabled under the first Russell
method. Thus, plaintiff is entitled to total disability benefits for periods of time between July 12, 2005 and October 22, 2005, and following June 29, 2006 (the end of his unsuccessful, trial return to work) on an ongoing basis. *Page 11 
6. The treatment provided by plaintiff's treating physicians including, but not limited to, Dr. Jeon, Dr. Carlson, Dr. Mayo, and Dr. Goode, has been reasonable and necessary to effect a cure, give relief, or lessen the period of disability. Thus, defendant is liable for this treatment. N.C. Gen. Stat. § 97-25. These doctors are designated plaintiff's treating physicians. N.C. Gen. Stat. § 97-25.
7. Plaintiff is at substantial risk of requiring future medical care, including lifetime psychiatric treatment and treatment for his heart, prescription medicine, as well as treatment with other specialists for his lyme arthritis and other symptoms. Thus, defendant is liable for plaintiff's future medical care. N.C. Gen. Stat. § 97-25.1; Taylor v. Bridgestone/ Firestone,Inc., 157 N.C. App. 453, 579 S.E.2d 413 (2003), dissent adoptedper curiam, 357 N.C. 565, 598 S.E.2d 379 (2003).
8. Plaintiff's counsel has provided valuable legal services and is entitled to a reasonable attorney's fee. N.C. Gen. Stat. § 97-90.
9. Because plaintiff has received long term disability benefits pursuant to the State Disability Plan, the State Retirement System is entitled to reimbursement based on back due workers' compensation total disability benefits to which plaintiff may be entitled, and is entitled to a credit for future workers' compensation benefits to which plaintiff may be entitled. N.C. Gen. Stat. § 135-106(b). This credit and right of reimbursement shall be administered in accordance with Willoughby v. Board of Trustees of Teachers' andState Employees' Retirement System,121 N.C. App. 444, 466 S.E.2d 285 (1996).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following: *Page 12 
 AWARD
1. Defendant shall pay to plaintiff total disability compensation in the amount of $341.09 per week beginning July 12, 2005, through October 22, 2005, and from June 29, 2006, and continuing until further Order of the Commission. All accrued benefits shall be forwarded directly to plaintiff in one lump sum subject to the attorney's fee below. The amount of accrued benefits to which plaintiff is entitled is subject to the State Retirement System's right of reimbursement discussed below.
2. Defendant shall pay for all medical expenses incurred or to be incurred for treatment provided to plaintiff by Dr. Jeon, Dr. Carlson, Dr. Mayo, and plaintiff's other physicians, for his compensable lyme disease, lyme meningitis, depression, PTSD, and other related conditions.
3. Plaintiff's counsel is entitled to a reasonable attorney's fee of twenty-five percent (25%) of back due and future benefits. Thus, defendant shall forward to plaintiff's counsel twenty-five percent (25%) of the back due, accrued disability benefits. Thereafter, defendant shall pay to plaintiff's counsel every fourth check due the plaintiff as his fee.
4. Plaintiff shall contact the State Retirement Systems division to determine the amount of the State Retirement System's right of reimbursement and shall forward this amount out of the accrued benefits to which plaintiff is entitled directly to the State Retirement System.
5. Defendant shall pay the costs due the Commission.
This the ___ day of August 2009.
S/___________________
BERNADINE BALLANCE
COMMISSIONER
CONCURRING:
S/___________________
DANNY L. McDONALD
COMMISSIONER
S/___________________
CHRISTOPHER SCOTT
COMMISSIONER
 *Page 1